UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA    :   4:CR-03-0347
                            :
    v.                      :   (Judge Muir)
                            :
MICHAEL JOHN SELBY         :

**OPINION**

I.  Introduction.

On November 26, 2003, a federal grand jury in Williamsport, Pennsylvania, returned a two-count indictment charging co-Defendants Michael John Selby and John W. Selby with conspiracy to distribute and possess with the intent to distribute marijuana and in excess of five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Michael John Selby is the son of John W. Selby.

This opinion deals only with Michael John Selby (hereinafter sometimes "Selby") who initially pled not guilty to all of the charges, but on July 7, 2004, agreed to plead guilty to one count of conspiracy to distribute controlled substances. The parties stipulated in a plea agreement filed in connection with the guilty plea that one of the controlled substances at issue was crack cocaine.

Selby's counsel sent a copy of the pre-sentence report to Selby on October, 2004. On October 13, 2004, Selby filed a *pro*

*se* motion to withdraw his guilty plea.  Selby's motion is based
on his assertion that his counsel had drastically under-
represented the potential sentence Selby faced as a result of the
guilty plea.  By order dated November 10, 2004, we allowed
Selby's privately-retained counsel to withdraw his appearance.
In that same order we appointed new counsel to represent Selby.
Because Selby's motion to withdraw his guilty plea had been filed
*pro se* while he had been represented by counsel, in our order #1
of December 1, 2004, we denied the motion without prejudice.

After granting Selby's new counsel a number of continuances,
on January 14, 2005, Selby filed through counsel a motion to
withdraw his guilty plea.  On that same date we issued an order
establishing a briefing schedule with respect to the motion.
Selby's supporting brief was filed on January 24, 2005.  The
government's opposition brief was filed on February 3, 2005.
Selby did not file a brief in reply.

The motion was not ripe for disposition at that point
because of disputed material facts.  After rescheduling the
hearing in response to two motions filed by Selby to continue the
hearing, the hearing was held on April 26, 2005.

The government filed its first set of annotated proposed
findings of fact and conclusions of law on April 26, 2005.  Selby
filed an initial set of annotated proposed findings of fact and

conclusions of law on March 21, 2004.  At the conclusion of the hearing held on April 26, 2005, the parties were provided an extension of time to file additional briefs and supplemental proposed findings of fact and conclusions of law.  Selby's supplemental proposed findings and conclusions were filed on April 28, 2005, and the government's were filed on the following day.  Selby's additional brief was filed on April 29, 2005.  The time allowed for the government to file a brief in reply expired on May 2, 2005, and no such brief was filed.  Selby's motion to withdraw his guilty plea is ripe for disposition.

The following are the Court's findings of fact, discussion, and conclusions of law.  Findings of fact which are not disputed are noted with a "U" in parenthesis after each such finding, and findings of fact which are not disputed but objected to are noted with a "U/O" in parenthesis after each such finding.

## II. Findings of fact.

1. In October of 2003 criminal charges were filed against Michael John Selby in a Pennsylvania state court based on the discovery of drugs and drug paraphernalia at his residence and on his person.

2. The discovery of those drugs occurred during a search of Michael John Selby's residence by state authorities.

3. The search was prompted by an attempt by the state

authorities to arrest a fugitive who the authorities
had reason to believe was living in Michael John
Selby's residence.

4.   The state authorities obtained a warrant to search
Michael John Selby's residence for the fugitive.

5.   When the drugs were found Michael John Selby was living
with his father, John W. Selby.

6.   In October of 2003, Michael John Selby retained Todd E.
Henry, Esquire, to represent him in the state criminal
proceedings.

7.   Attorney Henry was of the view that Michael John Selby
was facing a potential sentence of three to six years
on the state criminal charges.

8.   While the state criminal charges were pending, Attorney
Henry discussed with Michael John Selby the possibility
of suppressing the most damaging evidence pursuant to
a motion to suppress.

9.   On November 26, 2003, a federal grand jury sitting in
Williamsport, Pennsylvania, returned a two-count
indictment against co-defendants John W. Selby and
Michael John Selby, charging violations of 21 U.S.C. §§
841 and 846.

10.  Those charges stemmed from the state court drug charges

originally filed against only Michael John Selby.

11. On December 16, 2003, Attorney Henry entered his appearance in this court for Michael John Selby.   (U)

12. Shortly after the federal drug charges were filed, Attorney Henry met with Michael John Selby to discuss strategy.

13. During their first meeting to discuss the federal charges, on or about December 30, 2003, Michael John Selby decided to cooperate and meet with federal authorities for a proffer session with a Pennsylvania State Trooper.

14. Michael John Selby made the decision after being informed by Attorney Henry that a mandatory minimum sentence of five years applied to the federal charges and the maximum sentence of imprisonment was forty years.

15. At that time Attorney Henry's conversation with Michael John Selby regarding Selby's potential maximum sentence was based on the statutory forty-year maximum.

16. At their first meeting to discuss the federal charges, Attorney Henry also advised Michael John Selby that the only way Selby's sentencing exposure could be reduced was by way of a downward departure motion filed by the

government pursuant to United States Sentencing
Guideline § 5K1.1.

17.  Attorney Henry advised Michael John Selby that the
motion to suppress discussed in the context of the
state charges would most likely not be successful in
federal court.

18.  Although Attorney Henry did not explain to Michael John
Selby the significance of the "Career Offender"
provisions of the guidelines, Attorney Henry did inform
Michael John Selby during the first meeting that Selby
"would get a base level depending on the severity of
the crime[,] that he would have a career history and
depending on once the probation officer did a check of
his record, that is how his sentence would be
determined." (Transcript of Hearing on Motion to
Withdraw Guilty Plea, p. 81)

19.  Before the proffer session was held, Attorney Henry
advised Michael John Selby that once a proffer is
undertaken no evidence relating to the proffer may be
challenged at a later time.

20.  Before the proffer meeting was held, Attorney Henry
advised Michael John Selby that the evidence against
Selby relating to the information proffered could not

be successfully challenged, that the government would probably prevail at any trial, and that the only manner in which Selby could reduce his potential sentence of five to forty years was by cooperating with the government.

21. On December 30, 2003, Attorney Henry, Michael John Selby, and Pennsylvania State Trooper Michael J. Hudson attended a proffer session to discuss Michael John Selby's culpability with respect to the federal offenses.

22. During that session Michael John Selby admitted responsibility for all of the drugs at issue in the case.

23. At that time Michael John Selby admitted "to the lack of involvement that his father had" concerning the drugs. (Transcript of Hearing on Motion to Withdraw Guilty Plea, p. 103)

24. One of Michael John Selby's primary reasons to cooperate with the government was to eliminate his father's criminal liability in this case.

25. Michael John Selby's endeavor in that regard was successful, as the case against his father was resolved by way of a guilty plea to a criminal information

charging John W. Selby with misprision of a felony.

26. The charges against John W. Selby filed under the caption of this case were dismissed and the sentence imposed upon John W. Selby pursuant to the charge in the information was a term of probation.

27. On January 6, 2004, a hearing date for Selby's arraignment was set for January 27, 2004.  (U)

28. On January 26, 2004, Attorney Henry filed a motion to continue the arraignment which the court granted.  (U)

29. On January 27, 2004, an order was issued rescheduling Selby's arraignment for January 29, 2004.  (U)

30. On or about January 30, 2004, Selby pled not guilty to the federal charges.

31. Attorney Henry did not appear at the arraignment, but instead sent Attorney Kyle Rude, Esquire.  (U/O)

32. Selby did not hire Attorney Rude and Selby did not know Attorney Rude.  (U/O)

33. Selby did not know that Attorney Rude would be representing him at the arraignment.

34. Michael John Selby decided to enter into plea negotiations with the government in an attempt to obtain a downward departure pursuant to a § 5K1.1 motion and to keep his father from going to jail.

(Transcript of Hearing on Motion to Withdraw Guilty Plea, p. 86)

35.  When Michael John Selby was considering entering a guilty plea, Attorney Henry did not give any prediction as to Michael John Selby's potential sentence.

36.  At that time Attorney Henry "gave [Selby] a hope that if he could be honest and forthcoming with Trooper Hutson that they would give him a 5K1 and that would impact his sentence." (Transcript of Hearing on Motion to Withdraw Guilty Plea, p. 86)

37.  On May 19, 2004, a proposed plea agreement was forwarded to Attorney Henry by the government.  (U)

38.  Attorney Henry promptly sent a copy of the plea agreement to Selby.

39.  Selby signed the plea agreement and returned it to Attorney Henry.

40.  Paragraph 19 of the signed plea agreement provides as follows:

> The defendant understands that the Court is not a party to and is not bound by this agreement nor any recommendations made by the parties.  Thus, the court is free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment of 40 years, a fine of $2,000,000, a maximum term of supervised release of up to life, ... the costs of prosecution, denial of certain federal benefits and assessments of $100.

41.  In the plea agreement Selby explicitly acknowledged

     that he will not be permitted to withdraw his guilty

     plea if he is dissatisfied with the sentence imposed.

     (U)

42.  When the state drug charges and federal drug charges

     were filed against Michael John Selby Shareen Silva was

     his girlfriend.

43.  Silva testified that at some point Attorney Henry

     said that Mike was looking at three to five years and
     then he introduced the word departures saying that
     after certain departures were taken into consideration
     his time could be lowered – it would be lower than that
     range.

     (Transcript of Hearing on Motion to Withdraw Guilty

     Plea, p. 55)

44.  Attorney Henry testified that any conversation with

     Silva regarding Michael John Selby's potential sentence

     would have been limited to a statement to the effect

     that the statutory minimum sentence resulting from the

     federal charges was five years.

45.  On July 7, 2004, Selby appeared before this court and

     pled guilty to count 1 of the indictment pursuant to

     the aforesaid plea agreement.   (U)

46.  Attorney Henry did not appear at Michael John Selby's

     change of plea hearing.

47.  At the change of plea hearing, Selby was represented by
     Attorney Todd Eisenberg, Esquire.  (U)

48.  At the commencement of the change of plea hearing Selby
     was placed under oath.

49.  During that proceeding the government summarized the
     terms of the plea agreement, and specifically noted
     that "this is a nonbinding plea agreement, and the
     Court is, therefore, free pursuant to paragraph 21 –
     strike that -- 19 to impose any lawful sentence up to
     the statutory maximum of 40 years in jail, ...."
     (Transcript of Change of Plea Proceeding, p. 12)

50.  Selby was asked at the change of plea hearing whether
     he understood the plea agreement and he said "Yes."

51.  Selby was asked at the change of plea hearing whether
     he had any questions about the plea agreement and he
     said "No."

52.  The government summarized the evidence in this case
     against Selby during the change of plea hearing.

53.  When the court asked Selby whether he agreed with that
     summary he stated "Yes."

54.  When the court asked at the change of plea hearing if
     Selby disagreed with the prosecutor's summary in any
     way, he stated without hesitation "No."  (U)

55.  Selby executed a statement of facts in support of the guilty plea, consisting of nine paragraphs, wherein he disputed only one of those nine paragraphs, specifically paragraph number four which read, "when they searched the residence they observed in plain view drug paraphernalia in a bedroom."   (U)

56.  When asked at the change of plea hearing whether the statement of facts was correct, Selby agreed, except for the disputed paragraph, which had no bearing upon Selby's culpability for the offense.   (U)

57.  When asked at the change of plea hearing to describe in his own words what he did, Selby stated "Basically everything, you know, they say I did, I did as far as having the drugs or whatever and selling them."   (U)

58.  During additional questioning by defense counsel at the change of plea hearing, Selby admitted that he possessed marihuana, crack and cocaine at his residence on Hepburn Street in Milton, Pennsylvania, and that he planned to sell and use those substances.   (U)

59.  During the guilty plea colloquy and in the plea agreement, Selby admitted that he was responsible for 28.3 grams of crack cocaine, 39.7 grams of marihuana, and 30.78 grams of cocaine powder.   (U)

60.  At the change of plea hearing, when discussing how the
     United States Sentencing Guidelines applied in this
     case, the court advised Selby that the "tentative
     calculation of the guideline imprisonment range" of 100
     to 125 months was not necessarily the guideline
     imprisonment range that would be applied at sentencing.

61.  At the change of plea hearing the court advised Selby
     that

          we are not going to be able to determine what the
          guideline range is until after there's been a pre-
          sentence report prepared by the probation officer.
          You would have the right to challenge the facts in
          the report and to challenge the law, and the
          government would have the same right to challenge
          the facts and the law.  If there's a challenge on
          the facts, we'll have a pre-sentence or
          evidentiary hearing.  If there's a challenge on
          the law, we will have briefing.

     (Transcript of change of plea proceeding, p. 17)

62.  At the change of plea hearing, the court specifically
     advised Selby that "until we go through all that
     procedure and get the proposal and findings by the
     Probation Officer, we're not going to be able to make a
     determination of what the appropriate guidelines are,"
     and in response Selby stated plainly that he
     understood.  (U)

63.  Attorney Eisenberg never informed Attorney Henry that
     Michael John Selby was in any way reluctant to enter a

13

guilty plea pursuant to the plea agreement.

64. On September 30, 2004, a pre-sentence report was
prepared by the United States Probation Office in this
case.  (U)

65. According to the pre-sentence report, United States
Sentencing Guideline § 4B1.1(b), entitled "Career
Offender," elevates Michael John Selby's Offense Level
from 30 to 34.

66. The pre-sentence report states that Michael John
Selby's guideline imprisonment range is 188 to 235
months.

67. In early October 2004, Mr. Rude appeared at the
Lycoming County Prison to review the pre-sentence
report with Selby.  At the time Selby expressed much
concern about the amount of incarceration he was facing
under the United States Sentencing Guidelines.  Mr.
Rude relayed Selby's dissatisfaction and concerns to
Attorney Henry's office.  (U)

68. During his meeting with Attorney Rude, Michael John
Selby expressed a desire to object to every paragraph
in the pre-sentence report.

69. Attorney Rude conveyed that desire to Attorney Henry
and Attorney Henry informed the Probation Officer of

Michael John Selby's objections to the pre-sentence report.

70.   On behalf of Selby, Attorney Henry objected to every paragraph in the pre-sentence report.

71.   On October 13, 2004, Selby filed a "Pro Se Motion to Withdraw Guilty Plea."  (U)

72.   On October 20, 2004, Attorney Henry filed a motion to withdraw as counsel for defendant in this court.  (U)

73.   On October 29, 2004, a hearing was held on Attorney Henry's motion to withdraw in this court.  (U)

74.   Attorney Henry did not appear at that hearing.

75.   Instead, Attorney Henry sent Attorney Brendan McGuigan, Esquire, in his place.  (U)

76.   Attorney Henry's motion to withdraw his appearance was granted on November 10, 2004.

77.   While representing Michael John Selby, Attorney Henry did not appear at any court proceeding in this case.

78.   On November 15, 2004, Selby's current counsel, G. Scott Gardner, Esquire, was appointed to represent Selby.

### III.  Discussion.

The Court of Appeals for the Third Circuit has held that

[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim. *See* United States v. Martinez, 785 F.2d 111 (3d Cir.1986). Rather, a defendant must have a fair and just reason for withdrawing a plea of

15

> guilty. *See* Fed. R. Crim. P. 32(e).  We look to three
> factors to evaluate a motion to withdraw: (1) whether the
> defendant asserts [his or] her innocence; (2) whether the
> government would be prejudiced by the withdrawal; and (3)
> the strength of the defendant's reason to withdraw the plea.
> United States v. Huff, 873 F.2d 709, 711 (3d Cir.1989).  "A
> shift in defense tactics, a change of mind, or the fear of
> punishment are not adequate reasons to impose on the
> government the expense, difficulty, and risk of trying a
> defendant who has already acknowledged his guilt by pleading
> guilty." United States v. Jones, 979 F.2d 317, 318 (3d
> Cir.1992), *superseded by statute on other grounds as stated
> in,* United States v. Roberson, 194 F.3d 408, 417 (3d
> Cir.1999).

United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001).

We first consider whether Selby has sufficiently asserted
his innocence.  In his motion Selby represents that he "agreed to
plead guilty despite the fact that he is innocent of these
charges and was pleading guilty only to protect the other
individuals in his household," and that he now "wishes to
withdraw his guilty plea because he is factually innocent of the
charges." (Motion to withdraw guilty plea, ¶¶15, 23)  Those same
representations appear in the brief Selby filed in support of his
motion to withdraw his guilty plea.

The supplemental brief that Selby filed on April 29, 2005,
also addressed the issue of whether Selby has adequately asserted
his innocence.  In that brief he argues the following:

> The defendant's prior attorney, Todd Henry, Esquire,
> supported this assertion when he testified that the
> Defendant made it pretty clear to him at their first meeting
> that his primary concern was his father and that he wanted
> to make sure that his father received probation and not

16

receive incarceration as part of his sentence.  Thus, the testimony of Todd Henry, Esquire, clearly supports the Defendant's claim of innocence.

(Supplemental brief in Support of Motion to Withdraw Guilty Plea,

p. 1)

For the purposes of this case it is especially significant

that

[b]ald assertions of innocence ... are insufficient to permit a defendant to withdraw [his or her] guilty plea. *See United States v. Salgado-Ocampo*, 159 F.3d 322, 326 (7th Cir. 1998).  "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Id*. (citation omitted).  In addition to reasserting [his or her] innocence, a defendant must "give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea." *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992).

Id, at 818.

Selby contends that the facts of record supporting his

claimed innocence are found in Attorney Henry's testimony at the

hearing on the motion to withdraw the guilty plea.  Selby

believes that his efforts to minimize his father's role, which

was one of the topics covered by Attorney Henry's testimony,

establish his factual innocence.  Selby implicitly argues here

that minimizing his father's role somehow simultaneously

exculpates Selby.  We do not see how the former leads to the

latter.  To the contrary, the record establishes that Selby

exculpated his father by inculpating himself.

17

It is clear that Michael John Selby sought to minimize John W. Selby's criminal liability.  Michael John Selby accomplished that goal by repeatedly accepting responsibility for all of the drugs in the residence.  When interviewed by authorities and placed under oath at his guilty plea proceeding Selby constantly accepted responsibility for all of the drugs found in the home.

We accept as true Selby's assertions that one of his primary goals was to minimize his father's role.  Selby's taking responsibility for the drugs found in the residence achieved that goal.  While his desire to secure a sentence of probation for his father may have been the motivating factor for Selby's cooperation, that desire does not bear in any manner upon Selby's factual innocence.  Our review of the record indicates that there are no facts supporting Selby's claimed innocence.

Selby's failure to bolster his claim of factual innocence is fatal to his motion to withdraw his guilty plea.  However, that is not the only reason to deny the motion.

The second factor to consider is whether the government would be prejudiced by the withdrawal of Selby's guilty plea. There appear to be two reasons why the government would be prejudiced in this case if Selby were allowed to withdraw his guilty plea.  First, as stated by the government, if the guilty plea is withdrawn, the government would be denied the benefits of

its plea agreement.

A second reason relates to the government's prosecution of Selby's father, John W. Selby.  John W. Selby was originally named a co-defendant in this case.  As a result of Michael John Selby's statements that his father was not responsible for any of the drugs in the house, the charges in this case against John W. Selby were dismissed and John W. Selby pled guilty to the far less severe offense of misprision of a felony.

Michael John Selby now contends that he pled guilty "to protect members of his household." (Brief in support of motion to withdraw guilty plea, p. 5)  The information presented to us indicates that the only other "member of his household" was his father John W. Selby.  Apparently Michael John Selby is now claiming that his father is responsible for all of the drugs found at the residence.  It seems that allowing Michael John Selby to withdraw his guilty plea would further require the government to re-file charges against John W. Selby.

We will not allow a defendant to whipsaw the government by making patently inconsistent statements which affect multiple defendants and cases.  The second factor to consider weighs against granting Selby's motion.

The third and final element to consider is the strength of Selby's reason to withdraw his guilty plea.  Selby claims that

19

Attorney Henry's statements regarding his guideline imprisonment range somehow "misled" or "confused" him.  This claim is based entirely on the 188 to 235 month range determined by the Probation Officer in the pre-sentence report which was established by applying the career offender provisions of the United States Sentencing Guidelines.

In making this argument Selby fails to address the fact that he had repeatedly been advised that his term of imprisonment could be as much as forty years or 480 months.  The "Statement By Defendant" (Government Exhibit 1) and Plea Agreement (Government Exhibit 2) are both signed by Selby and each document clearly informs Selby that a forty-year sentence is possible.  Moreover, Selby failed to rebut Attorney Henry's testimony that Attorney Henry advised Selby of such a maximum sentence.  Selby was again made aware of the forty-year maximum at his guilty plea proceeding.

Another point to be made with respect to Selby's final argument is that Selby chose not to testify at the hearing held on his motion to withdraw his guilty plea.  Consequently, nothing in the record directly supports any of Selby's critical factual assertions.

The only evidence which comes close to supporting Selby's position is Ms. Silva's testimony that Attorney Henry

> said that Mike was looking at three to five years and then
> he introduced the word departures saying that after certain
> departures were taken into consideration his time could be
> lowered – it would be lower than that range.

(Transcript of Hearing on Motion to Withdraw Guilty Plea, p. 55)

Those statements are inconsistent not only with Attorney Henry's

recollection, but also with Selby's assertions in this case.

Selby asserts that Attorney Henry "assured Defendant Selby that

he would obtain a plea agreement, which would assure him of no

greater than a 5-year sentence." (Motion to withdraw guilty plea,

¶15)  At no point in his motion or brief does Selby refer to a

sentencing prediction of "three to five years."

    We will deny Selby's motion to withdraw his guilty plea.

Because Selby will not be permitted to withdraw his guilty plea

and we will now proceed to sentencing, we will require the

parties to brief Selby's pending objections to the pre-sentence

report.  Because those objections have been presented in only a

cursory and summary fashion, we will require Selby in his

supporting brief to specify the precise grounds of each

objection.  The date and time of sentencing will be set forth in

our order ruling on said objections.

V.  Conclusions of Law.

1.    Selby has not sufficiently asserted that he is innocent
      of the charges contained in the indictment filed in
      this case.

21

2.     The government would be prejudiced by Selby's
       withdrawal of his guilty plea.

3.     Selby's asserted reasons to withdraw his guilty plea
       are not supported by the record and are not strong.

An appropriate order will be entered.


                                    s/Malcolm Muir
                                    MUIR, U.S. District Judge

DATE: May 6, 2005

```
               UNITED STATES DISTRICT COURT
                        FOR THE
               MIDDLE DISTRICT OF PENNSYLVANIA
```

UNITED STATES OF AMERICA        :        4:CR-03-0347
                                :
        v.                      :        (Judge Muir)
                                :
MICHAEL JOHN SELBY              :
                                :

<u>ORDER</u>

May 6, 2005

1.    Selby's motion (Document 106) to withdraw his guilty
      plea is denied.

2.    Selby shall, by June 1, 2005, file a brief detailing
      with precision and addressing each and every one of his
      objections to the pre-sentence report.

3.    All subsequent briefing on Selby's objections shall be
      in accordance with the court's local rules.


                              <u>s/Malcolm Muir</u>
                              MUIR, U.S. District Judge



MM:ga